OPINION
{¶ 1} This is an appeal of the denial by the Court of Common Pleas of Fairfield County of Appellant's application for testing of DNA evidence and the failure to require the Prosecutor to take certain action pursuant to such application.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The Appellant was convicted of one court of rape of his eight-year-old daughter on January 29, 1993.
 {¶ 3} The evidence presented by the daughter at trial was that Appellant touched her "private" area with his penis, ejaculated on her stomach and committed cunnilingus on her.
 {¶ 4} She testified that after this, he wiped himself with a towel. DNA testing at that time indicated Appellant's semen was on a towel but that semen on her underpants was too degraded, based on the available scientific testing at such time, to determine its source.
 {¶ 5} Because of a recent change in the law effective October 29, 2003, the application of Appellant was filed.
 {¶ 6} The assignments of error are:
 ASSIGNMENTS OF ERROR {¶ 7} "I. THE TRIAL COURT'S DENIAL OF BLACKBURN'S APPLICATION FOR DNA TESTING IS CONTRARY TO LAW BECAUSE COMPARISON DNA TESTING THAT EXCLUDES BLACKBURN AS THE SOURCE OF THE AVAILABLE CRIME SCENE BIOMATERIAL WOULD BE OUTCOME DETERMINATIVE. (JOURNAL ENTRY, DECEMBER 16, 2004).
 {¶ 8} "II. THE TRIAL COURT ERRED BY FAILING TO `REQUIRE THE PROSECUTING ATTORNEY TO CONSULT WITH THE TESTING AUTHORITY AND TO PREPARE FINDINGS REGARDING THE QUANTITY AND QUALITY', THE CHAIN OF CUSTODY, AND THE RELIABILITY OF THE PARENT SAMPLE OF BIOLOGICAL MATERIAL COLLECTED FROM THE VICTIM. R.C. § 2953.76."
 {¶ 9} R.C. 2953.71, R.C. 2953.73 and R.C. 2953.76 provide:
 {¶ 10} "As used in sections 2953.71 to 2953.83 of the Revised Code:
 {¶ 11} "(A) "Application" or "application for DNA testing" means a request through postconviction relief for the state to do DNA testing on biological material from whichever of the following is applicable:
 {¶ 12} "(1) The case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing under sections 2953.71 to 2953.81 of the Revised Code;
 {¶ 13} "(2) The case in which the inmate pleaded guilty or no contest to the offense for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code.
 {¶ 14} "(B) `Biological material' means any product of a human body containing DNA.
 {¶ 15} "(C) `Chain of custody' means a record or other evidence that tracks a subject sample of biological material from the time the biological material was first obtained until the time it currently exists in its place of storage and, in relation to a DNA sample, a record or other evidence that tracks the DNA sample from the time it was first obtained until it currently exists in its place of storage. For purposes of this division, examples of when biological material or a DNA sample is first obtained include, but are not limited to, obtaining the material or sample at the scene of a crime, from a victim, from an inmate, or in any other manner or time as is appropriate in the facts and circumstances present.
 {¶ 16} "(D) `Custodial agency' means the group or entity that has the responsibility to maintain biological material in question.
 {¶ 17} "(E) `Custodian' means the person who is the primary representative of a custodial agency.
 {¶ 18} "(F) `Eligible inmate' means an inmate who is eligible under division (C) of section 2953.72 of the Revised Code to request DNA testing to be conducted under sections 2953.71 to 2953.81 of the Revised Code.
 {¶ 19} (G) `Exclusion' or `exclusion result' means a result of DNA testing that scientifically precludes or forecloses the subject inmate as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the inmate is an eligible inmate and for which the sentence of death or prison term was imposed upon the inmate or, regarding a request for DNA testing made under section 2953.82 of the Revised Code, in relation to the offense for which the inmate made the request and for which the sentence of death or prison term was imposed upon the inmate.
 {¶ 20} "(H) `Extracting personnel' means medically approved personnel who are employed to physically obtain an inmate DNA specimen for purposes of DNA testing under sections 2953.71 to 2953.81 or section 2953.82 of the Revised Code.
 {¶ 21} "(I) `Inclusion' or `inclusion result' means a result of DNA testing that scientifically cannot exclude, or that holds accountable, the subject inmate as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the inmate is an eligible inmate and for which the sentence of death or prison term was imposed upon the inmate or, regarding a request for DNA testing made under section 2953.82 of the Revised Code, in relation to the offense for which the inmate made the request and for which the sentence of death or prison term was imposed upon the inmate.
 {¶ 22} "(J) `Inconclusive' or `inconclusive result' means a result of DNA testing that is rendered when a scientifically appropriate and definitive DNA analysis or result, or both, cannot be determined.
 {¶ 23} "(K) `Inmate' means an inmate in a prison who was sentenced by a court, or by a jury and a court, of this state.
 {¶ 24} "(L) `Outcome determinative' means that had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code, no reasonable factfinder would have found the inmate guilty of that offense or, if the inmate was sentenced to death relative to that offense, would have found the inmate guilty of the aggravating circumstance or circumstances the inmate was found guilty of committing and that is or are the basis of that sentence of death.
 {¶ 25} "(M) `Parent sample' means the biological material first obtained from a crime scene or a victim of an offense for which an inmate is an eligible inmate or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code, and from which a sample will be presently taken to do a DNA comparison to the DNA of the subject inmate under sections 2953.71 to 2953.81 or section 2953.82 of the Revised Code.
 {¶ 26} "(N) `Prison' has the same meaning as in section 2929.01 of the Revised Code.
 {¶ 27} "(O) `Prosecuting attorney' means the prosecuting attorney who, or whose office, prosecuted the case in which the subject inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code.
 {¶ 28} "(P) `Prosecuting authority' means the prosecuting attorney or the attorney general.
 {¶ 29} "(Q) `Reasonable diligence' means a degree of diligence that is comparable to the diligence a reasonable person would employ in searching for information regarding an important matter in the person's own life.
 {¶ 30} "(R) `Testing authority' means a laboratory at which DNA testing will be conducted under sections 2953.71 to 2953.81 or section2953.82 of the Revised Code."
 {¶ 31} R.C. 2953.76 provides:
 {¶ 32} "If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court shall require the prosecuting attorney to consult with the testing authority and to prepare findings regarding the quantity and quality of the parent sample of the biological material collected from the crime scene or victim of the offense for which the inmate is an eligible inmate and is requesting the DNA testing and that is to be tested, and of the chain of custody and reliability regarding that parent sample, as follows:
 {¶ 33} "(A) The testing authority shall determine whether there is a scientifically sufficient quantity of the parent sample to test and whether the parent sample is so minute or fragile that there is a substantial risk that the parent sample could be destroyed in testing. The testing authority may determine that there is not a sufficient quantity to test in order to preserve the state's ability to present in the future the original evidence presented at trial, if another trial is required. Upon making its determination under this division, the testing authority shall prepare a written document that contains its determination and the reasoning and rationale for that determination and shall provide a copy to the court, the eligible inmate, the prosecuting attorney, and the attorney general. The court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.
 {¶ 34} "(B) The testing authority shall determine whether the parent sample has degraded or been contaminated to the extent that it has become scientifically unsuitable for testing and whether the parent sample otherwise has been preserved, and remains, in a condition that is suitable for testing. Upon making its determination under this division, the testing authority shall prepare a written document that contains its determination and the reasoning and rationale for that determination and shall provide a copy to the court, the eligible inmate, the prosecuting attorney, and the attorney general.
 {¶ 35} "(C) The court shall determine, from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample and from the totality of circumstances involved, whether the parent sample and the extracted test sample are the same sample as collected and whether there is any reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected. Upon making its determination under this division, the court shall prepare and retain a written document that contains its determination and the reasoning and rationale for that determination.
 I, II {¶ 36} We shall address both Assignments of Error jointly as the ultimate determination under the statute is whether DNA testing now available would be "outcome determinative" and this affects both Assignments of Error.
 {¶ 37} We reject both Assignments of Error and find that Appellant's statement, "This Court may never see another case where DNA exclusion results are more clearly outcome determinative than the results would be in this case", to be flawed.
 {¶ 38} The facts in this case, as stated previously, indicate that the victim testified that Appellant touched her private area with his penis, committed cunnilingus and ejaculated on her stomach and then used a towel on himself.
 {¶ 39} Appellant's DNA was found on the towel, corroborating the victim's testimony.
 {¶ 40} Whether DNA was also found and identified on her underpants is unrelated to the conviction as the rape was premised on cunnilingus rather than by insertion of his penis.
 {¶ 41} Clearly, the testing of the underpants is not "outcome determinative" as to the conviction which was premised on the credibility of the child.
 {¶ 42} Also, the jury clearly did not accept the testimony of Appellant's brother as to "recantation" by the victim.
 {¶ 43} The Assignments of Error are denied.
 {¶ 44} The judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.
Boggins, P.J., Farmer, J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed. Costs assessed to Appellant.