OPINION
{¶ 1} Appellant, Larry M. Schlee, appeals from the November 16, 2004 judgment entry of the Lake County Court of Common Pleas, denying his application for DNA testing.
 {¶ 2} The instant matter arises from the conviction and sentence of appellant on one count of aggravated murder for the murder of Frank Carroll ("Carroll") in 1980, in which he was given a life sentence. A brief review of the procedural history of this case is necessary.
 {¶ 3} On September 28, 1992, appellant was initially indicted by the Lake County Grand Jury on one count of aggravated murder in violation of R.C. 2903.01.[1] He pleaded not guilty and the matter proceeded to a jury trial. On March 31, 1993, the jury returned a guilty verdict, and appellant was sentenced to life imprisonment with parole eligibility after twenty years.
 {¶ 4} Appellant appealed his conviction to this court. InState v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, we affirmed his conviction.
 {¶ 5} Subsequently, appellant filed two motions for postconviction relief. His first motion for postconviction relief was filed on September 23, 1996, alleging ineffective assistance of counsel. Pursuant to its May 15, 1997 judgment entry, the trial court overruled appellant's petition without holding an evidential hearing. Appellant appealed to this court. In Statev. Schlee (Dec. 31, 1998), 11th Dist. No. 97-L-121, 1998 Ohio App. LEXIS 6363, we reversed and remanded the matter to the trial court to file findings of fact and conclusions of law that addressed each of his claims that were not barred by res judicata.
 {¶ 6} While the foregoing appeal was still pending, appellant filed a second petition for postconviction relief on December 18, 1997, alleging that he had newly discovered evidence to prove that appellee, the state of Ohio, committed a Crim.R. 16 discovery violation during his trial. Appellee filed a motion to dismiss appellant's second petition. Pursuant to its July 22, 1998 judgment entry, the trial court denied appellant's petition for postconviction relief, and granted appellee's motion to dismiss without an evidential hearing. The trial court determined that it could not entertain the petition because the submission failed to satisfy the requirements governing a second or successive petition for postconviction relief under R.C. 2953.23. From that judgment, appellant filed another notice of appeal with this court on August 21, 1998, which we affirmed in State v.Schlee (Dec. 17, 1999), 11th Dist. No. 98-L-187, 1999 Ohio App. LEXIS 6136.
 {¶ 7} With respect to appellant's first petition for postconviction relief, on remand, the trial court issued findings of fact and conclusions of law and entered a judgment entry on June 21, 1999. In that entry, the trial court addressed the three claims that were not barred by res judicata, and ultimately dismissed appellant's petition without holding an evidential hearing because he failed to demonstrate substantive grounds for relief on his ineffective assistance of counsel claims. Appellant timely filed an appeal on July 21, 1999. This court in State v.Schlee (Sept. 22, 2000), 11th Dist. No. 99-L-112, 2000 Ohio App. LEXIS 4354, affirmed the judgment of the trial court.
 {¶ 8} On July 2, 2002, appellant filed a motion for new trial based upon newly discovered evidence and prosecutorial misconduct. The trial court granted this motion on August 21, 2002. Appellee filed a notice of appeal and a motion for leave to appeal on September 20, 2002, but this court denied its motion on March 24, 2003. On June 19, 2003, the trial court set a trial date of November 3, 2003. On October 3, 2003, upon joint motion, the trial court continued the new trial until March 8, 2004.[2]
 {¶ 9} The new trial began as scheduled on March 8, 2004. Prior to commencement of the trial, appellant filed a motion to dismiss the charge on speedy trial grounds. The trial court denied appellant's motion and proceeded with the trial. On March 19, 2004, the jury returned a guilty verdict. On March 26, 2004, appellant was sentenced to life imprisonment with parole eligibility after fifteen years.
 {¶ 10} On April 2, 2004, appellant filed a motion for new trial, which was overruled by the trial court on April 15, 2004, after a hearing. Appellant timely filed a notice of appeal. This court affirmed appellant's conviction in State v. Schlee, 11th Dist No. 2004-L-070, 2005-Ohio-5117.
 {¶ 11} On October 26, 2004, appellant filed an application for DNA testing. Pursuant to its November 16, 2004 judgment entry, the trial court denied his application. The trial court determined, pursuant to R.C. 2953.74, that a prior inconclusive DNA test was conducted regarding the same biological evidence that appellant sought to have tested. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 12} "The trial court erred and/or abused its discretion to the prejudice of [appellant] when it denied his application for DNA testing."
 {¶ 13} In his sole assignment of error, appellant argues that the trial court erred and/or abused its discretion to his prejudice by denying his application for DNA testing. He contends that when Carroll's remains were found in New York in 1981, a cursory autopsy was performed and there was no forensic evidence implicating him to the murder. Appellant stresses that his conviction was based primarily on the testimony of Amy Binns Woodsby, and alleged eyewitness. Prior to his 2004 trial, appellant and appellee agreed to submit a sample of two hair strands caught in Carroll's watchband, which proved to be insufficient. He alleges that insufficient evidence at one time does not mean that it is forever inconclusive as a result of new and improved testing methods. Also, appellant maintains that there are other biological samples available for testing other than just the two hair strands.[3]
 {¶ 14} "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157.
 {¶ 15} R.C. 2953.74 sets forth the following grounds for accepting or rejecting an application for DNA testing:
 {¶ 16} "(A) * * * If an eligible inmate files an application for DNA testing and a prior inconclusive DNA test has been conducted regarding the same biological evidence that the inmate seeks to have tested, the court shall review the application and has the discretion, on a case-by-case basis, to either accept or reject the application. * * *
 {¶ 17} "(B) If an eligible inmate submits an application for DNA testing * * * the court may accept the application only if one of the following applies:
 {¶ 18} "* * *
 {¶ 19} "(2) The inmate had a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the inmate shows that DNA exclusion would have been outcome determinative at the trial stage in that case.
 {¶ 20} "(C) If an eligible inmate submits an application for DNA testing * * * the court may accept the application only if all of the following apply:
 {¶ 21} "(1) The court determines * * * that biological material was collected from the crime scene or the victim of the offense for which the inmate is an eligible inmate and is requesting the DNA testing and that the parent sample of that biological material against which a sample from the inmate can be compared still exists at that point in time.
 {¶ 22} "(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:
 {¶ 23} "* * *
 {¶ 24} "(3) The court determines that, at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting DNA testing, the identity of the person who committed the offense was an issue.
 {¶ 25} "(4) The court determines that one or more of the defense theories asserted by the inmate at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.
 {¶ 26} "(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that inmate.
 {¶ 27} "(6) The court determines pursuant to section 2953.76
of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected."
 {¶ 28} R.C. 2953.71(L) provides: "`Outcome determinative' means that had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and had been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code, no reasonable factfinder would have found the inmate guilty of that offense * * *."
 {¶ 29} In the case at bar, we note that in their October 3, 2003 joint motion for continuance, the parties indicated: "both [appellee] and [appellant] agree that no further requests for subsequent DNA analysis on these hairs will be made, regardless of the results obtained by the FBI testing."
 {¶ 30} In any event, again, appellant had a DNA test taken of hair samples found in Carroll's watchband during the trial stage in his second jury trial. The FBI conducted a test in 2004, which proved to be inconclusive. Since this DNA evidence was not used at the trial, it was never contended that the DNA on Carroll's watchband belonged to the person who committed the crime.
 {¶ 31} Pursuant to R.C. 2953.74, although appellant is an eligible inmate, he fails to show that a DNA exclusion would have been outcome determinative in his trial. Even if DNA testing excluded appellant, a reasonable jury could still find him guilty of aggravated murder. A reasonable jury could come to this conclusion based solely on circumstantial evidence as well as on witness testimony. State v. Combs, 162 Ohio App.3d 706,2005-Ohio-4211, at ¶ 32. As such, pursuant to R.C. 2953.71(L), DNA testing would not be "outcome determinative."
 {¶ 32} In addition, again, although appellant states in his appellate brief that he is not limiting his request for DNA testing to the samples that were previously sent to the FBI, he fails to specify what, if any, other samples would be an issue. Furthermore, appellant's application for DNA testing only indicates his desire to have the hair samples which were embedded in Carroll's watchband tested. Pursuant to R.C. 2953.74, the trial court properly denied appellant's application by determining that a prior inconclusive DNA test was conducted regarding the same biological evidence.
 {¶ 33} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
O'Neill, J., Grendell, J., concur.
[1] Although Carroll was murdered in 1980, his body was discovered in New York in 1981, and remained unidentified until 1992.
[2] The trial court permitted the delay for the purpose of DNA testing.
[3] We note that appellant fails to specify what, if any, other samples would be at issue.