DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Douglas Prade, appeals from the order of the Summit County Court of Common Pleas, denying his renewed application for post-conviction DNA testing. This Court affirms.
 I {¶ 2} On September 24, 1998, a jury found Prade guilty of the aggravated murder of his ex-wife, Dr. Margo Prade. The jury also found Prade guilty of possessing criminal tools and engaging in multiple instances of intercepting a wire, oral, or electronic communication. The trial court sentenced Prade to life in prison, and this Court affirmed his convictions on direct appeal. State v. Prade (2000),139 Ohio App.3d 676.
 {¶ 3} On October 29, 2004, Prade filed an application for DNA testing pursuant to R.C. 2953.71, et seq. On May 2, 2005, the trial court denied Prade's application. The court determined that Prade did not qualify for DNA testing because R.C. 2953.74(A) precludes post-conviction *Page 2 
DNA testing when "a prior definitive DNA test has been conducted." The trial court noted that DNA evidence was introduced at Prade's trial and excluded Prade as the source of the DNA samples taken from Margo. Prade sought to appeal from the trial court's order, but filed a late notice of appeal. As such, this Court dismissed the appeal as untimely. SeeState v. Prade, 9th Dist. No. 22718.
 {¶ 4} On February 5, 2008, Prade filed a second application for DNA testing. On June 2, 2008, the trial court denied Prade's second application. The court again determined that Prade did not qualify for post-conviction DNA testing because prior definitive DNA testing had been conducted. The court further determined that Prade failed to show that additional DNA testing would be outcome determinative, as required by R.C. 2953.74(B), because the prior DNA testing had excluded Prade as a source of the DNA tested and other evidence at trial supported his convictions.
 {¶ 5} Prade now appeals from the trial court's denial of his second application for DNA testing and raises three assignments of error for our review.
 II Assignment of Error Number One "IN LIGHT OF ADVANCES IN DNA TESTING METHODS SINCE DEFENDANT'S 1998 TRIAL, THE TRIAL COURT ERRED IN CONCLUDING THAT INCONCLUSIVE DNA TESTS CONDUCTED IN 1998 WERE `PRIOR DEFINITIVE DNA TEST[S]' AND IN DENYING DEFENDANT'S APPLICATION FOR PUBLICLY-FUNDED TESTING FOR THAT REASON BASED ON R.C. § 2953.74(A)."
 {¶ 6} In his first assignment of error, Prade argues that the trial court erred in denying his application for post-conviction DNA testing on the basis that his prior DNA testing was definitive. Specifically, he argues that his prior DNA testing was not definitive because newer *Page 3 
testing methods and databases could conceivably identify the perpetrator of Margo's murder. We disagree.
 {¶ 7} This Court applies a de novo standard of review to the legal conclusions reached by a trial court in its decision to deny an application for post-conviction DNA testing pursuant to R.C. 2953.73, et seq. State v. Wilkins, 9th Dist. No. 22493, 2005-Ohio-5193, at ¶ 6. R.C. 2953.73(A) permits an eligible inmate to submit an application for DNA testing to the court of common pleas. The court then must determine, based on the criteria and procedures set forth in R.C. 2953.74 to R.C. 2953.81, whether to accept or reject the application. R.C. 2953.73(D). R.C. 2953.74(A) provides, in relevant part, that:
 "If an eligible inmate submits an application for DNA testing *** and a prior definitive DNA test has been conducted regarding the same biological evidence that the inmate seeks to have tested, the court shall reject the inmate's application. If an eligible inmate files an application for DNA testing and a prior inconclusive DNA test has been conducted regarding the same biological evidence that the inmate seeks to have tested, the court shall review the application and has the discretion, on a case-by-case basis, to either accept or reject the application." (Emphasis added.)
Consequently, if an eligible inmate has had a prior DNA test, a trial court first must determine whether the test was definitive or inconclusive. Id. A conclusion that an inmate's prior DNA test was definitive mandates the denial of the application. Id.
 {¶ 8} The Revised Code does not define the phrase "definitive DNA test." Wilkins at ¶ 9. The Revised Code does provide, however, that an inconclusive DNA testing result is one "rendered when a scientifically appropriate and definitive DNA analysis or result, or both, cannot be determined." R.C. 2953.71(J). As such, a scientifically appropriate DNA test that produces an inconclusive result is at least one example of a DNA test that is not definitive. Id. When the Revised Code does not define a term or phrase, this Court applies "the time-honored rule that words used by the General Assembly are to be construed according to their common *Page 4 
usage." Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100,103. The term "definitive" means "serving to provide a final solution or to end a situation[.]" Merriam-Webster's Collegiate Dictionary (11th Ed. 2004) 327. This construction of the term "definitive" comports with the Revised Code's use of the term "definitive." See R.C. 2953.71(J) (providing that an inconclusive DNA test result is not a definitive result); R.C. 2953.74(A) (juxtaposing a prior "definitive" DNA result, which bars further testing, with a prior "inconclusive" DNA result, which allows further testing). Accordingly, we must conclude that a "definitive DNA test" is a DNA test that serves to provide a final, conclusive solution. See, e.g., State v. Williams, 5th Dist. No. 05-CA-36, 2006-Ohio-1381, at ¶ 81 (concluding that a DNA test performed on a minute sample was not definitive because it only produced a partial DNA profile, which 1 in 64 individuals possess).
 {¶ 9} The trial court denied Prade's second application for DNA testing because it determined that Prade had a definitive DNA test at his trial. Prade concedes that DNA evidence was introduced at his trial, but argues that the DNA test results were not definitive because: (1) not all of the evidence contained enough biological material to be tested based on the testing methods available at the time; and (2) newer testing methods could yield additional results, such as the presence of another male's DNA, and possibly identify another perpetrator if run through a national DNA database.[1] For these reasons, Prade argues, the DNA test results introduced at his trial were inconclusive, not definitive. See id. *Page 5 
 {¶ 10} Four pieces of evidence were tested for the presence and identification of biological markers: (1) Margo's fingernail clippings; (2) a bite mark left on the fabric of the lab coat that Margo was wearing when she was murdered; (3) a broken, gold tennis bracelet discovered on the ground next to the passenger's door of the vehicle in which Margo was murdered; and (4) a link that had separated from the broken, gold tennis bracelet and had fallen inside of Margo's vehicle. Thomas Callaghan, a forensic DNA examiner for the FBI, testified that he performed Polymerase Chain Reaction ("PCR") testing on the foregoing evidence. Callaghan explained that PCR testing allows for the extraction and multiplication of "very small amounts of DNA." According to Callaghan, the tests performed on Margo's fingernail clippings and the swabs from the bite mark on her lab coat "absolutely excluded" Prade as a contributor of the DNA Callaghan found on those items. Callaghan specified that Prade "could not have contributed the DNA that was identified." Further, Callaghan stated that "I believe that the conclusions from my report are that [Prade] is excluded as a contributor to all the DNA that was typed in this case." Callaghan's lab report confirmed that Prade could not have contributed to the DNA discovered on either Margo's fingernail clippings or her lab coat.
 {¶ 11} Other additional lab reports reflected the foregoing results. The Laboratory Corporation of America ("LCA") conducted tests on the link from Margo's broken, gold tennis bracelet. A Certificate of Analysis from the LCA concluded, based on a PCR test, that the DNA profile of the blood found on the tennis bracelet link was "different than the DNA profile obtained from the reference sample from Douglas Prade[.]" The Serological Research Institute ("SRI") performed tests on a cutting from the area of Margo's lab coat that contained the bite mark. The SRI report indicated that a saliva test was performed on the cutting, but that no amylase, the testable component of saliva, was detected. Further testing, however, uncovered *Page 6 
cellular material on the lab coat cutting and allowed for DNA extraction and amplification by PCR. Based on the PCR testing, the SRI report concluded that the DNA detected on the lab coat cutting could not have come from Prade.
 {¶ 12} DNA test results may be "inconclusive" for a variety of reasons. See, e.g., State v. Hatton, 4th Dist. No. 05CA38,2006-Ohio-5121, at ¶ 16 (noting expert's opinion that DNA analysis was inconclusive because sample did not contain sufficient DNA); State v.Schlee, 11th Dist. No. 2004-L-207, 2006-Ohio-2391, at ¶ 29-30 (noting inconclusive DNA testing result on hair samples and refusing further testing to potentially gain an exclusion result); State v.Blackburn, 5th Dist. No. 05CA3, 2005-Ohio-4710, at ¶ 4; ¶ 40 (refusing additional testing on one item of evidence after initial testing indicated the sample was too degraded to determine its source);State v. Hoyden, 2d Dist. No. 20747, 2005-Ohio-4025, at ¶ 12 (noting that prior DNA test was inconclusive because it could not exclude the defendant as the perpetrator). The DNA results obtained for Prade's trial, however, were not inconclusive. All of the test results excluded Prade as a contributor to the DNA extracted from the various pieces of evidence. Prade asks this Court to conclude that an exclusion result is not a definitive result. Yet, an exclusion result provides a final, conclusive solution. See Merriam-Webster's Collegiate Dictionary (11th Ed. 2004) 327 (defining the term "definitive"). Therefore, we must conclude that Prade's DNA tests, all of which produced exclusion results, constituted prior, definitive DNA tests within the meaning of R.C. 2953.74(A).
 {¶ 13} This Court acknowledges Prade's argument that it is possible that newer DNA testing methods could detect additional DNA material that older methods were unable to detect. The emergence of newer and arguably better technologies always remains as a possibility. Indeed, the newer testing methods upon which Prade seeks to rely now may become obsolete in *Page 7 
another ten years. Yet, the General Assembly did not include the availability of newer testing methods as a factor that a court must consider in determining whether an eligible inmate has had a prior definitive DNA test. See R.C. 2953.74(A). Nor did the General Assembly further define the term "inconclusive" to include a DNA testing result obtained via an older testing method. See R.C. 2953.71(J). "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions there from." Hubbard v. Canton City School Bd.of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 14. As such, we conclude that the trial court correctly denied Prade's application on the basis that Prade received a prior definitive DNA test regarding the same biological evidence that he seeks to have tested in his second application for DNA testing. See R.C. 2953.74(A). Prade's first assignment of error is overruled.
 Assignment of Error Number Two "IN LIGHT OF ADVANCES IN DNA TESTING METHODS SINCE DEFENDANT'S 1998 TRIAL, THE TRIAL COURT ERRED IN CONCLUDING THAT ADDITIONAL TESTING WOULD MERELY `DUPLICATE THE RESULTS PRESENTED AT TRIAL' AND, FOR THAT REASON, DENYING DEFENDANT'S APPLICATION FOR PUBLICLY-FUNDED TESTING BECAUSE IT WOULD NOT BE `OUTCOME DETERMINATIVE' AS REQUIRED BY R.C. § 2953.74([B])."
 {¶ 14} In his second assignment of error, Prade argues that the trial court erred in denying his application for post-conviction DNA testing on the basis that additional testing would not be outcome determinative. Specifically, he argues that it is probable additional testing would be outcome determinative because it could potentially identify the perpetrator of Margo's murder rather than merely excluding Prade as the source of the DNA. *Page 8 
 {¶ 15} R.C. 2953.74(B) provides, in relevant part, that:
 "If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies:
 "***
 "(2) The inmate had a DNA test taken at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing regarding the same biological evidence that the inmate seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the inmate shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject inmate's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case."
Prade argues that the trial court erred in determining that he failed to satisfy the outcome determinative prong of R.C. 2953.74(B). To reach the issue of outcome determination, however, one first must conclude that an eligible inmate did not have a prior definitive DNA test. R.C. 2953.74(A). Because this Court already has determined that Prade had a prior definitive DNA test, his argument is moot.
 {¶ 16} Moreover, Prade already had DNA exclusion results introduced at his trial, and the jury convicted him in spite of those results. SeePrade, 139 Ohio App.3d at 696-700 (affirming jury's verdict and concluding that Prade's aggravated murder conviction was not against the manifest weight of the evidence). None of the cases that Prade cites in support of his argument involve a defendant who had a DNA exclusion result introduced at trial. See State v. Emerick, 2d Dist. No. 21505,2007-Ohio-1334, at ¶ 17-22 (permitting additional DNA testing when exclusion result could not be obtained at time of trial); State v.Elliot, 1st Dist. No. C-050606, 2006-Ohio-4508, at ¶ 2-3 (permitting DNA testing when exclusion result discovered after testing one piece of evidence one year after trial); State v. Hightower, 8th Dist. Nos. 84248 84398, 2005-Ohio-3857, at ¶ 1; ¶ 29 (permitting DNA testing when testing was not available at *Page 9 
the time of conviction). We fail to see how yet another "DNA exclusion *** would have been outcome determinative at the trial stage in [this matter]." R.C. 2953.74(B). Prade's second assignment of error is overruled.
 Assignment of Error Number Three "WHERE A LABORATORY AGREED TO CONDUCT DNA TESTING THAT MAY ESTABLISH DEFENDANT'S INNOCENCE WITHOUT CHARGE, THE TRIAL COURT ERRED AND DENIED DEFENDANT HIS CONSTITUTIONAL RIGHTS IN FINDING THAT SUCH PRIVATELY-FUNDED DNA TESTING WAS `PROHIBITED' AS THE RESULT OF A PURPORTED FAILURE TO SATISFY THE REQUIREMENTS FOR PUBLICLY-FUNDED DNA TESTING UNDER R.C. § 2953.73 ET SEQ."
 {¶ 17} In his third assignment of error, Prade argues that the trial court erred in refusing to make the physical evidence from his trial available for DNA testing funded from a private source. Specifically, he argues that both R.C. 2953.84 and due process considerations afford him the right to have privately-funded DNA testing conducted.
 {¶ 18} R.C. 2953.84 provides that:
 "The provisions of sections 2953.71 to 2953.82 of the Revised Code by which an inmate may obtain postconviction DNA testing are not the exclusive means by which an inmate may obtain postconviction DNA testing, and the provisions of those sections do not limit or affect any other means by which an inmate may obtain postconviction DNA testing."
The statute does not specify what "other means" an inmate may employ to obtain postconviction DNA testing. Id. According to Prade, privately-funded testing constitutes such an alternative mean.
 {¶ 19} The record reflects that Prade failed to preserve this argument in the court below. Prade argues that he preserved this issue because his application clearly noted three times that a private source was available to fund the DNA testing and also cited to the U.S. and Ohio Constitutions. We cannot conclude, however, that three references to free DNA testing equate to *Page 10 
a request for DNA testing by "other means" through the application of R.C. 2953.84. Prade's application does not even cite to R.C. 2953.84, much less rely upon it as a basis for granting further DNA testing. Similarly, Prade's application cites to the U.S. and Ohio Constitutions solely to argue the existence of a "right to conduct discovery" in the event that the State "claim[ed] that [it could not] find any relevant biological material suitable for DNA testing[.]" The application does not rely upon the Constitutions to argue a constitutional right to privately-funded DNA testing. Moreover, we cannot conclude that Prade's ultimate request that the trial court "[o]rder such other and further relief to which Douglas Prade may be justly entitled" sufficiently preserves his argument. If such broad language sufficed, then any party seeking relief in a trial court could preserve every conceivable argument for appeal simply by making a general request for relief. This Court has recognized that "arguments not brought to the attention of the court below may not be raised for the first time on appeal." MorganBank, N.A. v. Security-Connecticut Life Ins. Co. (Dec. 5, 2001), 9th Dist. No. 20594, at *4. Because Prade failed to bring this argument to the attention of the trial court, we will not consider it for the first time on appeal. Prade's third assignment of error is overruled.
 III {¶ 20} Prade's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. *Page 11 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, J. MOORE, P. J. CONCUR
[1] Although the State argues that res judicata bars Prade's second application for DNA testing, Prade correctly points out that the State waived the affirmative defense of res judicata by raising it for the first time on appeal. See North Olmsted Auto Paint Supply Co. v.Lettieri (July 22, 1992), 9th Dist. No. 91CA005211, at *3 (concluding that affirmative defense was waived when not raised at the trial level). *Page 1