The STATE of Ohio, Appellee,

v.

COMBS, Appellant.

[Cite as State v. Combs, 162 Ohio App.3d 706, 2005-Ohio-4211.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2004–P–0058.

Decided Aug. 12, 2005.

Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos, Assistant Prosecuting Attorney, for appellee.

Timothy A. Combs, pro se.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Appellant, Timothy A. Combs, appeals from a judgment of the Portage County Court of Common Pleas, denying his application for DNA testing pursuant to R.C. 2953.73. For the reasons set forth below, we affirm the judgment of the trial court.

{¶ 2} It appears as if this case is a case of first impression for this court.

{¶ 3} On September 10, 1985, the victim, 12–year–old Raymond Fife, was found in a field directly behind a supermarket in Warren, Trumbull County, Ohio. This field had a path running through it that the victim often used as a shortcut. At the time he was found, the victim was alive but unconscious. His body was nude except for his shoes and socks. His briefs or shorts had been tied around his neck. The victim died two days later from the injuries he sustained that evening.

{¶ 4} Appellant and his codefendant, Danny Hill, were indicted by the Trumbull County Grand Jury on five charges, including aggravated murder with specifications of aggravating circumstances, in violation of R.C. 2903.01(B); kid-

napping, in violation of R.C. 2905.01; rape, in violation of R.C. 2907.02(A)(1)(3); aggravated arson, in violation of R.C. 2909.02; and felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(3).

{¶ 5} Appellant moved to suppress the statements he made to the detectives subsequent to his arrest. The Trumbull County trial court denied his motion after a hearing.

{¶ 6} The matter was later transferred to the Portage County Court of Common Pleas, where appellant was tried before a jury. On May 5, 1986, a jury found appellant guilty of all five counts contained within the indictment. The trial court confirmed the verdict on May 13, 1986.

{¶ 7} The trial court sentenced appellant to life imprisonment with parole eligibility after 30 years on the aggravated murder conviction; life imprisonment on the rape and felonious sexual penetration convictions; and ten to 25 years of imprisonment on the aggravated arson and kidnapping convictions. All sentences were ordered to be served consecutively.

{¶ 8} Appellant appealed his conviction. *State v. Combs* (Dec. 2, 1988), 11th Dist. No. 1725, 1988 WL 129449. Within his five assignments of error, appellant argued that his confession was not voluntary. Within this assignment of error, appellant contended that the detectives used psychological coercion when they played excerpts from the Hill tape. Citing *State v. Jackson* (1977), 50 Ohio St.2d 253, 4 O.O.3d 429, 364 N.E.2d 236, we upheld the trial court and ruled that playing the tape did not constitute coercion and that appellant's statements were voluntary.

{¶ 9} Pursuant to R.C. 2953.73, appellant filed an application for DNA testing on May 14, 2004. Appellant requested that the biological samples from the victim's body and from the victim's clothing be tested. In his application, appellant stated that DNA testing would have changed the outcome of his case because his conviction was based upon a "coerced confession from underage defendant. DNA will prove that the 'details of the confession' cannot be accurate. DNA will prove that the applicant was not involved as presented by coerced confession and prosecution's theory of the case. * * * DNA evidence would affirmatively demonstrate the applicant's actual innocence in this case." Appellant did not attach any supporting affidavits or documentary evidence to his application.

{¶ 10} Appellee opposed DNA testing, stating that DNA testing would not be outcome determinative.

{¶ 11} Pursuant to R.C. 2953.75(A), appellee provided a statement to the court detailing the biological evidence that was collected and the samples that remained

available for further testing. According to the statement, blood samples from the victim, appellant, and his codefendant were initially preserved.

{¶ 12} Further, although several items recovered were submitted to determine the presence of blood, blood was detected only on a white sock that appellant wore on the day of the crime. For example, a broken broom handle, believed to have been used to perforate the victim's rectum and bladder, was collected from a field near the crime scene. It tested negative for blood. The rape kit performed on the victim also tested negative, and testimony was admitted demonstrating that this result was likely from the victim's copious loss of blood. Various human hairs were also collected from appellant and Hill, and they were compared to those on the victim's shorts. Based upon hair analysis, it was determined that appellant was not a contributor.

{¶ 13} The white tube sock that appellant wore on the day of the crime tested positive for the presence of blood and was admitted at trial. ABO blood typing was the most rigorous forensic testing available at the time. Attached to the state's list of biological evidence was a laboratory report by criminalist James W. Wurster, who testified on behalf of the state. According to this report, "[t]he combination of genetic markers found on the sock from [appellant] and common to [the victim] are found in approximately 14% of the Caucasian population (1 in every 7 individuals), thereby eliminating approximately 86% of the population as being a possible source of the blood. [Appellant] * * * can be eliminated as a source of the blood on his sock. [The victim] cannot be eliminated and therefore could be the source of the blood."

{¶ 14} To summarize, little forensic evidence connected appellant to the crime. The only forensic connection between appellant and the victim was appellant's tube sock, which contained blood of which the victim could not be eliminated as the source. The trial transcript reveals that the state's case was based primarily upon appellant's confession, testimony of other witnesses corroborating appellant's confession, and the white tube sock.

{¶ 15} In a June 29, 2004 judgment entry, the trial court denied appellant's application for DNA testing. The trial court stated that appellant "has failed to demonstrate that DNA exclusion would have been outcome determinative in his case. * * * [Appellant] cites to no specific biological material collected or preserved which might possibly exonerate him in this crime. According to the Court's review of the records, the only biological material preserved that connected [appellant] to this homicide was blood found on [appellant's] white tube sock which, through ABO typing, matched a sample of blood drawn from [the victim]. Five genetic markers matched to [the victim], and [appellant] was specifically excluded as a possible source. * * * At best, this evidence is cumulative of

[appellant's] statement that he engaged in anal intercourse with a child who was unconscious and bloody."

{¶ 16} From this judgment, appellant appeals and sets forth the following assignment of error:

{¶ 17} "The trial court erred in determining that the results of DNA testing would not be outcome determinative."

{¶ 18} R.C. 2953.74(C) sets forth the following grounds for reviewing an application for DNA testing:

{¶ 19} "If an eligible inmate submits an application for DNA testing * * *, the court may accept the application only if all of the following apply:

{¶ 20} "(1) The court determines * * * that biological material was collected from the crime scene of the victim of the offense for which the inmate is an eligible inmate and is requesting the DNA testing and that the parent sample of that biological material against which a sample from the inmate can be compared still exists at that point in time.

{¶ 21} "(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:

{¶ 22} " * * *

{¶ 23} "(3) The court determines that, at the trial stage in the case in which the inmate was convicted of the offense for which the inmate is an eligible inmate and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

{¶ 24} "(4) The court determines that one or more of the defense theories asserted by the inmate at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

{¶ 25} "(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that inmate."

{¶ 26} R.C. 2953.71(L) defines "outcome determinative." According to R.C. 2953.71(L), " '[o]utcome determinative' means that had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and had been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised

Code, no reasonable factfinder would have found the inmate guilty of that offense * * *."

{¶ 27} Our review of the record reveals that appellant's sole assignment of error is without merit. In this matter, DNA testing would not be outcome determinative.

{¶ 28} In appellant's application for DNA testing, he requested that the biological samples from the victim's body and from the victim's clothing should be tested. He did not request that the blood on his own tube sock be subjected to DNA testing. However, in the interest of justice, we will construe appellant's application as also requesting that the blood on his sock be subjected to DNA testing.

{¶ 29} The case against appellant was marked by a lack of forensic evidence affirmatively linking appellant to the crime. The only forensic evidence possibly linking appellant to the crime was the blood found on his sock. ABO blood typing revealed that the victim could have served as a source of this blood, but the blood could not have come from appellant.

{¶ 30} Appellant's conviction was based primarily on circumstantial evidence, and also appellant's confession and testimony of other witnesses corroborating the confession. The trial court and this court of appeals concluded in *Combs*, 11th Dist. No. 1725, that the trial court did not err when admitting appellant's audio, visual, and written statements.

{¶ 31} Appellant's own statement during interrogation described how he and Hill committed the crimes. From this statement, there can be no question that appellant affirmatively implicated himself in the crimes. Further, appellant bragged to one classmate that he had killed the victim and enjoyed doing it. Three other classmates placed appellant at or near the crime scene at the time of the crime. One even testified that he saw appellant with Hill at the crime scene, and appellant was pulling up his zipper while Hill was tossing a stick.

{¶ 32} Even if DNA testing excluded the victim as the source of the blood on appellant's sock, a reasonable jury could still find appellant guilty of the charges set forth in the indictment. A reasonable jury could come to this conclusion based solely upon circumstantial evidence, appellant's confession, and testimony of the other witnesses. Therefore, pursuant to R.C. 2953.71(L), DNA testing would not be "outcome determinative."

{¶ 33} Appellant's sole assignment of error is without merit. We hereby affirm the judgment of the trial court.

Judgment affirmed.

FORD, P.J., concurs.

GRENDELL, J., concurs in judgment only.