OPINION
{¶ 1} Defendant-appellant Paul Lemke appeals the decision of Columbiana County Common Pleas Court denying his application for DNA testing under R.C. 2953.71 et seq. The issue presented in this case is whether the trial court erred when it denied the application for DNA testing by finding that the testing would not be outcome determinative. For the reasons expressed below, the judgment of the trial court is hereby affirmed.
 STATEMENT OF CASE {¶ 2} On January 17, 1990, Lemke was indicted by the Columbiana County grand jury on one count of aggravated murder in violation of R.C. 2903.01(B). The murder count carried three specifications: 1) the offense was committed while committing or attempting to commit aggravated burglary of which Lemke was the principal offender; 2) the offense was committed while committing of attempting to commit aggravated robbery of which Lemke was the principal offender; and 3) the offense was committed while committing or attempting to commit rape of which Lemke was the principal offender.
 {¶ 3} A jury trial for the above charges began on June 18, 1990. On June 28, 1990, the jury found Lemke guilty of aggravated murder and all three specifications. The sentencing phase began on July 9, 1990. The next day the jury found that the aggravating circumstances did outweigh the mitigating factors present in the case. Thus, it recommended a sentence of life imprisonment with parole eligibility after thirty years.
 {¶ 4} Lemke then appealed to this court. This court affirmed his conviction. He then filed a Motion in Support of Jurisdiction to the Ohio Supreme Court. The Ohio Supreme Court overruled the motion and did not accept the appeal for review.
 {¶ 5} On May 6, 2005, Lemke filed a timely application for DNA testing pursuant to R.C. 2953.71 and 2953.73 in the Columbiana County Common Pleas Court. The state responded to this motion. On June 28, 2005, the trial court overruled Lemke's application for DNA testing. That order is an appealable order pursuant to R.C. 2953.73(E)(2). This timely appeal follows.
 STATEMENT OF THE FACTS {¶ 6} A brief statement of facts surrounding the 1989 murder and rape of the victim Mary Horning is necessary not only for background information, but also for review of the argument presented on appeal. As such, the facts from our 1992 opinion are reproduced below.
 {¶ 7} "In the early morning of December 18, 1989, the appellant [Lemke] arrived at a bar in Akron, Ohio. The appellant allegedly told two acquaintances, Gregory S. Brumbaugh and Jerry Taylor that he had killed his neighbor earlier that evening and took her car. (Tr. 1352, 1355-1358, 1381-1382, 1359). Later, a Cuyahoga Falls patrolman observed appellant speeding west along West Portage Trail in a red Pontiac TransAm. (Tr. 1378-1379). The patrolman pulled the vehicle over and Jerry Taylor exited, however, the vehicle sped away. (Tr. 1381-1383).
 {¶ 8} "At approximately 3:00 a.m. a City of Akron patrolman spotted the vehicle parked outside a convenience store. (Tr. 1393). As the vehicle left the scene, the patrolman followed and later arrested its driver, the appellant. (Tr. 1400-1402). The vehicle was registered to Mary Horning of Leetonia, Ohio. (Tr. 1475). The police later searched Miss Horning's apartment and found her dead. (Tr. 1504)." State v. Lemke (June 26, 1992), 7th Dist. No. 90-C-51.
 {¶ 9} Further evidence found in the record that is necessary for review is as follows. While Lemke was in custody, he told an Ohio State Reformatory inmate and prisoner at the Columbiana County Jail, Eric Scott Ryhal, that he murdered and sexually assaulted Mary Horning. The testimony at trial revealed that Lemke described to Ryhal, in great detail, what occurred between himself and Mary Horning.
 ARGUMENT {¶ 10} As the state points out, Lemke does not provide this court with assignments of error as are required by App.R. 16(A)(3). However, given Lemke's brief, one is able to deduce that he finds fault with the trial court's determination that DNA testing in his case would not be outcome determinative. Thus, in the interests of justice, this court will address that argument.
 {¶ 11} We review the trial court's ruling denying the application for DNA testing under a de novo standard of review.State v. Wilkens, 163 Ohio App.3d 576, 2005-Ohio-5193, ¶ 6.
 {¶ 12} An application for DNA must not only be timely, but also must be applied for by an inmate who is eligible to request the testing. State v. Hightower, 8th Dist. Nos. 84248 and 84398, 2005-Ohio-3857; R.C. 2953.72 and 2953.73. To be timely, the application must have been submitted by October 29, 2005. R.C. 2953.73. Eligibility to request DNA testing is set forth in R.C. 2953.72(C)(1) as follows:
 {¶ 13} "(a) The offense for which the inmate claims to be an eligible inmate is a felony that was committed prior to the effective date of this section, and the inmate was convicted by a judge or jury of that offense.
 {¶ 14} "(b) The inmate was sentenced to a prison term or sentence of death for the felony described in division (C)(1)(a) of this section and, on the effective date of this section, is in prison serving that prison term or under that sentence of death.
 {¶ 15} "(c) On the date on which the application is filed, the inmate has at least one year remaining on the prison term described in division (C)(1)(b) of this section, or the inmate is in prison under a sentence of death as described in that division.
 {¶ 16} "(2) An inmate is not an eligible inmate under division (C)(1) of this section regarding any offense to which the inmate pleaded guilty or no contest."
 {¶ 17} Both parties admit, and a review of the record establishes, that not only was Lemke eligible to file an application for DNA testing, but also that his application was timely. However, in order for Lemke's application to be granted, he was required to show that the "DNA exclusion would have been outcome determinative at the trial stage in that case." R.C.2953.74(B)(1).
 {¶ 18} "Outcome determinative" is defined as "had the results of DNA testing been presented at the trial of the subject inmate requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the inmate is an eligible inmate and is requesting the DNA testing or for which the inmate is requesting the DNA testing under section 2953.82 of the Revised Code, no reasonable factfinder would have found the inmate guilty of that offense." R.C. 2953.71(L).
 {¶ 19} "Exclusion" as used in R.C. 2953.74(B)(1) means "a result of DNA testing that scientifically precludes or forecloses the subject inmate as a contributor of biological material recovered from the crime scene or victim in question, in relation to the offense for which the inmate is an eligible inmate and for which the sentence of death or prison term was imposed upon the inmate." R.C. 2953.71(G).
 {¶ 20} Thus, Lemke was required to show that if DNA testing were performed and he was excluded from being the donor of the biological material, no reasonable jury could have found him guilty of the charge of which he was convicted. In Lemke's application for DNA testing he requests DNA tests of vaginal swabs (sperm), saliva, fecal matter, hair, blood, and mouth swabs.
 {¶ 21} First, addressing the DNA testing of vaginal swabs of the victim, Lemke argues that the matter at hand is similar to the Hightower case that recently came out of the Eighth Appellate District. The state, on the other hand, contends that this case is similar to the Wilkens case out of the Ninth Appellate District.
 {¶ 22} In Hightower, Hightower was convicted of rape, murder in the perpetration of rape, and abduction for immoral purposes. In finding that the trial court erred when it denied the application for DNA testing, the Eighth Appellate District explained that at the time of trial the prosecution made the presence of semen in the victim's body central to its evidence.Hightower, 2005-Ohio-3857, at ¶ 23. "Except for the presence of sperm, there was no physical evidence that sexual intercourse had even occurred." Id. at ¶ 24. Furthermore, it stated:
 {¶ 23} "The prior history of this case confirms that the margin of evidence by which defendant was convicted was extremely narrow. A prior jury acquitted defendant of first-degree murder and was unable to return a verdict on the charges of rape, murder in the perpetration of rape, and abduction for immoral purposes — the same charges of which he was found guilty in the second trial. Clarifying that the sperm was not defendant's would have firmly established reasonable doubt that defendant raped the victim — a reasonable doubt that the first jury, in fact, had. Because of the paucity of evidence that did not depend upon the testimony of Wilson, no reasonable factfinder would have found the evidence beyond a reasonable doubt that defendant had committed rape, if a DNA test proved the sperm was not defendant's." Id. at ¶ 29.
 {¶ 24} Thus, the Eighth District reversed the trial court's denial of the application for DNA testing, and ordered DNA testing on the cervical swabs.
 {¶ 25} However, in Wilkens, the Ninth Appellate District distinguished the facts in Hightower from the facts presented to it. Wilkens was found guilty of rape in 1986. A rape kit was performed on the victim and it confirmed that semen was present. The test showed that Wilkens could not be eliminated from the population of individuals with the same blood type as the offender. In 2004, Wilkens filed an application for DNA testing. The trial court overruled the application. The Ninth Appellate District, in affirming the trial court's decision, explained that this case differed from Hightower. It stated that the cervical swab was not central to the prosecution's case and that other evidence was presented to show rape. Wilkens,163 Ohio App.3d 576, at ¶ 16. Thus, it concluded that it was possible that a reasonable factfinder could have found Wilkens guilty of rape even if a conclusive DNA test had excluded him as the source of semen taken from the cervical swab. Id. at ¶ 16.
 {¶ 26} In the matter at hand, we have three different people, Gregory Brumbaugh, Jerry Taylor and Eric Scott Ryhal, testifying that Lemke told them he killed the victim (either by referencing her as his neighbor, which she was, as the owner of the 1979 Pontiac TransAm he was driving, which she was, or by her name). Furthermore, Ryhal, testified that Lemke told him he sexually assaulted the victim. All three of these witnesses provide an independent link apart from any DNA evidence that provides evidence that Lemke committed the crime for which he was convicted. See State v. Combs, 162 Ohio App.3d 706,2005-Ohio-4211 (discussing appellant's own admission and other witnesses' testimony implicated him in the crime).
 {¶ 27} Additionally, physical evidence independent of any DNA testing also linked Lemke to the crime. Lemke was found driving the victim's car, he was wearing a pair of ladies' gloves which were given to the victim as a gift from her boyfriend. He also had a large sum on cash on his person and a large of sum of cash was missing from the victim's apartment. Also, other items found in Lemke's possession were items that were missing from the victim's apartment. Evidence further established bruising on the victim that is consistent with sexual assault. Testimony established that the position and condition of the victim's body and clothing supported rape. See Wilkens, 163 Ohio App.3d 576, (discussing other injuries which were evidence of rape). The disarray of her apartment also supported the conclusion that she was raped.
 {¶ 28} Moreover, DNA testing in this case would provide no further evidence of whether or not Lemke committed the crime. The prosecution's case against Lemke was not based on the presence of sperm in the victim's body. The victim's boyfriend testified that he and the victim had sex at least twice the day of her murder. Furthermore, Lemke told Ryhal that while committing the rape, he did not ejaculate in the victim. Thus, any DNA testing that excluded Lemke's sperm from the sperm found in the victim's body would not have established that a reasonable factfinder would not have found him guilty of the crime. In fact, excluding his sperm just would confirm Ryhal's testimony that Lemke did not ejaculate in the victim.
 {¶ 29} Thus, we find this case distinguishable fromHightower and analogous to Wilkens. While in Hightower, the guilt finding was closely linked to the presence of sperm in the victim's body, here, as in Wilkens, there was other evidence linking Lemke to the crime. In other words, the state's case against Lemke was not based upon the presence of Lemke's sperm in the victim's body, rather, other evidence such as the confessions to three witnesses, the state of the victim, and her apartment was relied on. In fact, the lack of Lemke's sperm in the victim's body would bolster the state's case given Ryhal's testimony. Therefore, even if DNA excluded Lemke as the donor of the sperm, a reasonable factfinder could still have found him guilty of rape and murder.
 {¶ 30} Likewise, for that same reason, the remainder of Lemke's argument regarding DNA testing on saliva, fecal matter, hair, blood, and mouth swabs would also fail. DNA testing on these materials would not be outcome determinative when considering all the other evidence linking Lemke to the crime. That said, as explained below, there are additional reasons why the saliva, fecal matter, hair, blood, and mouth swabs DNA testing argument fails.
 {¶ 31} As for DNA testing on the stains of saliva that were found on the victim's robe, it is noted that a test was performed on the saliva by BCI. The test determined that the saliva was consistent with the victim's blood type and, as such, since the victim and Lemke did not have the same blood type, the saliva could not have come from him. As such, since the test that was performed on the saliva already excluded Lemke as the donor, any further testing would be futile and not outcome determinative.
 {¶ 32} Regarding the fecal matter, it was admitted to be the victim's, it was found on the victim's robe, carpet in the victim's apartment, and on a pair of jeans that were discarded along Route 14. Lemke admitted to traveling Route 14 between Columbiana County and Akron on the night of the murder, however, he denies that the jeans, which are identical to the size and style of jeans that were found in his apartment, were his jeans. Given all this information, any testing on this matter would merely link the victim to the fecal matter (which has already been admitted), robe and jeans. It would not be outcome determinative for Lemke.
 {¶ 33} Likewise, Lemke's request for DNA testing on a vial of blood that was taken from the victim also fails. It is undisputed that the vial of blood was taken from the victim. How testing this undisputed blood of the victim would establish that a reasonable factfinder would not find him guilty of the crime is unclear. Testing the blood would merely establish that it was the victim's blood. Even if somehow this testing could help his cause, with all the other evidence, a reasonable jury could still find him guilty. See Combs, 162 Ohio App.3d 706, at ¶ 32.
 {¶ 34} Lastly, regarding hair, blood and mouth swabs taken from Lemke and other persons, the trial court correctly determined that DNA testing was not warranted on these. R.C.2953.74(C)(1), 2953.75(A), and 2953.76 specifically indicates that the biological material at issue must be collected from the crime scene or victim of the offense in order for DNA testing to be warranted. These samples were not obtained from the crimescene or the victim. Thus, they do not qualify as biological material that can be tested under R.C. 2953.71 et seq.
 {¶ 35} Consequently, considering all the above, Lemke failed to meet the requirements of R.C. 2953.74(B)(1), i.e. that DNA exclusion would have been outcome determinative at the trial stage. His arguments, therefore, are without merit.
 {¶ 36} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.