[Cite as *State v. Ingram*, 2012-Ohio-333.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

BERNIE T. INGRAM

    Appellant

C.A. No.     25843

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 1990-05-0928(A)

DECISION AND JOURNAL ENTRY

Dated: February 1, 2012

---

MOORE, Judge.

{¶1}    Appellant, Bernie T. Ingram, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    In a prior appeal, *State v. Ingram*, 9th Dist. No. 15049, 1991 WL 284168, this Court set forth the underlying factual and procedural history as follows:

"On February 13, 1990, Larry Dixon discovered the body of his brother-in-law, Kenneth Mack, on the living room floor of Mack's apartment.  Mack, who was six feet tall and weighed approximately two hundred pounds, had been stabbed sixty-nine times.  In the weeks preceding his death, Mack had purchased a wide-screen television, video cassette recorder (VCR), and an extensive stereo system. The above items, and others, were missing from Mack's apartment at the time his body was discovered.

"On May 11, 1990, as the result of an anonymous tip, the Akron Police Department discovered Mack's television, VCR, and stereo equipment in the possession of [Ingram's] step-brother, David McGhee.  McGhee indicated that [Ingram] had given or sold Mack's belongings to him.  As a result of interviews with McGhee, [Ingram] was arrested for the death of Mack.

"Because he was a minor at the time of Mack's death, [Ingram] was originally charged in the Summit County Court of Common Pleas, Juvenile Division. On May 22, 1990, [Ingram] was indicted, as an adult, for receiving stolen property. On August 15, 1990, the Summit County Juvenile Court bound [Ingram] over as an adult to the Summit County Grand Jury. The grand jury returned an indictment on August 31, 1990, on two counts of aggravated murder.

"Count one charged that [Ingram] purposely, with prior calculation and design, caused the death of Mack, R.C. 2903.01(A), and included the specification that the offense was committed while [Ingram] was committing or attempting to commit, as the principal offender, aggravated robbery, R.C. 2929.04(A)(7) (specification for imposing death or imprisonment for a capital offense). Count two charged, pursuant to the state's felony murder statute, that [Ingram] purposely caused the death of Mack while committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery, R.C. 2903.01(B). Count two also included the same specification as count one.

"At trial, [Ingram] claimed he killed Mack in self-defense. [Ingram] testified that, on the night preceding Mack's death, he and Mack had met in a local bar. [Ingram] agreed to accompany Mack to his apartment for more drinks, but fell asleep once he reached Mack's apartment. [Ingram] claimed that he woke up as Mack was attempting to make sexual advances toward him. [Ingram], who is physically smaller than Mack, testified that he objected, but that Mack continued to overpower him. While the two wrestled, [Ingram] produced a small knife, and stabbed Mack. [Ingram] testified that, after killing Mack, he proceeded to empty the apartment of Mack's belongings. In a series of four to five trips, [Ingram] carried Mack's television, VCR, stereo equipment, clothing, lamps, and wall furnishings to his own home. Most of the above items were recovered and introduced at trial.

"At the close of the evidence, the trial court instructed the jury on both counts of aggravated murder, as well as the receiving stolen property charge. In addition, the trial court instructed the jury on murder, R.C. 2903.02, and aggravated robbery, R.C. 2911.01, as lesser included offenses of aggravated murder. [Ingram] was found not guilty of both aggravated murder charges, but guilty of murder and aggravated robbery. [Ingram] was also found guilty of receiving stolen property. [Ingram] was sentenced to serve fifteen years to life on the murder charge, and five to twenty-five years on the aggravated robbery charge, sentences to run consecutively. [Ingram] received an eighteen month sentence on the receiving stolen property charge, to be served concurrently." *Id*. at *1-2.

{¶3} On appeal, this Court affirmed his convictions for murder and receiving stolen property, and reversed his conviction for aggravated robbery, leaving Ingram to serve a fifteen-year to life prison term. *Id*. at *6.

{¶4} On October 29, 2010, Ingram filed an application for DNA testing pursuant to R.C. 2953.72. In it he argued that had a pubic hair found near the victim's body been tested, and had the results shown that it belonged to Ingram, his claim that he was sexually assaulted by the victim would have been strengthened. The application was denied on February 11, 2011.

{¶5} Ingram timely filed a notice of appeal. He raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT COMMITTED PLAIN ERROR WHERE IT CONCLUDED THAT A NEW DNA TEST IN [INGRAM'S] FAVOR WOULD NOT BE OUTCOME DETERMINATIVE IN VIOLATION OF [INGRAM'S] ABSOLUTE RIGHT TO PROCEDURAL DUE PROCESS OF LAW AS GUARANTEED UNDER THE OHIO AND UNITED STATES CONSTITU[T]ION."

{¶6} In his sole assignment of error, Ingram argues that the trial court erred when it concluded that a new DNA test in Ingram's favor would not be outcome determinative. We do not agree.

{¶7} "We begin by noting that our standard of review as to the legal conclusions of the trial court is de novo." *State v. Wilkins*, 163 Ohio App.3d 576, 2005-Ohio-5193, ¶ 6 (9th Dist.), citing *State v. Rossiter*, 9th Dist. No. 03CA0078, 2004-Ohio-4727, ¶ 5, citing *State v. Russell*, 127 Ohio App.3d 414, 416 (9th Dist.1998). "This Court is bound to 'affirm a trial court's judgment that is legally correct on other grounds' regardless of the arguments raised or not raised by the parties." *State v. Perez*, 9th Dist. No. 23419, 2007-Ohio-2897, ¶ 28 (Carr, P.J., dissenting).

{¶8} Advances in DNA testing prompted the General Assembly in 2003 to enact R.C. 2953.71 through 2953.83. The statutes permit an eligible prison inmate who has been convicted

of a felony and who has at least a year remaining on his prison term to file with the common pleas court a postconviction application for DNA testing of biological evidence upon which no DNA test, or an inconclusive DNA test, has been conducted. *See* R.C. 2953.71(F), 2953.72(A) and (C), 2953.73(A), and 2953.74(A) and (B).

{¶9} An eligible offender who "did not have a DNA test taken at the trial stage in the case in which the offender was convicted" may submit an application for DNA testing under R.C. 2953.73, but the court may accept the application only if the offender demonstrates "that DNA *exclusion* when analyzed in the context of and upon consideration of all admissible evidence * * * would have been outcome determinative at that trial stage in that case[.]" (Emphasis added). R.C. 2953.74(B)(1). Ingram's application for DNA testing asked "[w]ould testing prove that it was not your DNA?" He responded "No [to the] contrary, it would prove it was." Ingram's argument centers on a DNA *inclusion*. As such, Ingram is unable to demonstrate that a DNA *exclusion* would be outcome determinative in accordance with R.C. 2953.74(B)(1).

{¶10} Accordingly, Ingram's sole assignment of error is overruled.

### III.

{¶11} Ingram's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

BERNIE T. INGRAM, pro se, Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.