[Cite as *State v. Daniels*, 2020-Ohio-3810.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2019 CA 0106 |
| MICHAEL J. DANIELS, JR. | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common
                            Pleas, Case No.  2013 CR 0759


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     July 22, 2020


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

GARY BISHOP                         MICHAEL K. DANIELS, JR.
PROSECUTING ATTORNEY                PRO SE
JOHN C. SNYDER                      RICHLAND CORR. INSTITUTION
ASSISTANT PROSECUTOR                P. O. Box 8107
38 South Park Street                Mansfield, Ohio  44905
Mansfield, Ohio  44902

*Wise, P. J.*

{¶1}   Appellant Michael K. Daniels, Jr., appeals the October 2, 2019, decision of the Richland County Common Pleas Court denying his Application for DNA testing.

{¶2}   Appellee is the state of Ohio.

*Accelerated Calendar*

{¶3}   Preliminarily, we note this case is before this Court on the accelerated calendar which is governed by App.R. 11.1. Subsection (E), determination and judgment on appeal, provides in pertinent part: "The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form."

{¶4}   One of the important purposes of the accelerated calendar is to enable an appellate court to render a brief and conclusory decision more quickly than in a case on the regular calendar where the briefs, facts, and legal issues are more complicated. *Crawford v. Eastland Shopping Mall Assn.*, 11 Ohio App.3d 158, 463 N.E.2d 655 (10th Dist. 1983).

{¶5}   This appeal shall be considered in accordance with the aforementioned rules.

<u>STATEMENT OF THE FACTS</u>

{¶6}   For purposes of this Opinion, the relevant facts and procedural history are as follows.

{¶7}   On December 6, 2013, the Richland County Grand Jury indicted Appellant on one count of possession of cocaine (amount exceeding 100 grams), a felony of the first degree, in violation of  R.C. §2925.11(A) and (C)(4)(f) and one count of trafficking in

cocaine (amount exceeding 100 grams), a felony of the first degree, in violation of R.C. §2925.03(A)(2) and (C)(4)(g). Both counts were charged with a "major drug offender" specification and a forfeiture specification for $673.00 in seized U.S. currency connected with the aforesaid events.

{¶8} Appellant entered pleas of not guilty to the above counts and specifications.

{¶9} On February 6, 2014, Appellant filed a motion for DNA testing to be completed on the large bag of drugs he was caught with.

{¶10} On February 26, 2014, the trial court granted Appellant's motion.

{¶11} Based on the record, no DNA was ever collected or analyzed.

{¶12} The matter proceeded to a jury trial held on May 15 and 16, 2014. During the trial, the State presented testimony from four witnesses: three Mansfield police officers and a city lab technician. Their testimony was as follows:

{¶13} On the late afternoon of November 5, 2013, the Mansfield Police Department received a 911 call regarding suspected drug selling activity near an apartment complex at 750 Maple Street. The caller gave information about three vehicles, including a silver Nissan. The caller also gave descriptions of five males in the vicinity. (T. at 118–121). Officer Sarah Mosier–Napier was on K–9 road patrol with her police dog and responded to the call. She pulled into the parking lot of the apartment complex and saw a silver Nissan, occupied by two men. When she drove her cruiser up behind the vehicle, it pulled around and proceeded into an actual parking space. When Mosier–Napier further pulled up behind the Nissan, the driver, later identified as Appellant, parked the vehicle, got out, and fled on foot. (T. at 121–123). Appellant was observed by the officer as wearing a brown leather jacket and blue jeans. (T. at 126).

{¶14} Officer Mosier–Napier radioed that Appellant was fleeing and gave a description. In the meantime, the passenger, who did not run away, was found to have $1,700.00 in U.S. currency on his person.

{¶15} Another Mansfield officer, Sergeant Brubaker, arrived shortly thereafter and began a foot chase after Appellant. At about this point, Officer Nicole Gerhart arrived and joined the foot chase. She also witnessed Appellant wearing a brown leather jacket. However, Appellant was able to lose Officers Brubaker and Gerhart. As the search continued, more information about Appellant's clothing and the direction he was heading was put out on the radio. (T. at 138-150).

{¶16} After the radio call, Officer Stephen Brane, responding in his cruiser, saw Appellant run past him on Highland Avenue. This occurred at about 5:00 PM, while it was still daytime. (T. at 150–151). Officer Brane followed Appellant in his cruiser into an alley. At this location, and about twenty to twenty-five feet in front of him, Officer Brane observed Appellant drop a grey grocery store bag on the ground while attempting to remove his jacket. (T. at 151–152, 165, 177–178). Appellant eventually turned in the direction of a fenced area, and Officer Brane was able to pull up and arrest him. (T. at 151-153, 180). Appellant was searched and found to have $673.00 in currency on his person. (T. at 153-157). Brane also went back and retrieved the dropped grocery bag. Inside the bag was found three baggies of suspected crack cocaine, which field-tested positive for drugs. (T. at 160).

{¶17} Appellant presented no witnesses in his defense.

{¶18} On May 16, 2014, the jury found Appellant guilty on both counts, but rejected the forfeiture specifications.

{¶19} At sentencing, the trial court applied the major drug offender specifications. The two counts were found to be allied offenses. Based on the State's election, the trafficking count was merged into the possession count. The trial court thereupon sentenced Appellant to a total of eleven (11) years in prison, plus five (5) years of post-release control.

{¶20} Appellant's convictions were upheld by this Court in *State v. Daniels*, 5th Dist. Richland No. 14 CA 49, 2015-Ohio-1002.

{¶21} On August 11, 2015, the Ohio Supreme Court declined to accept jurisdiction.

{¶22} On October 8, 2015 this Court denied Appellant's Application to Re-open his appeal.

{¶23} On March 18, 2019, Appellant filed a Motion for Leave to File Delayed Motion for New Trial, which was denied on April 18, 2019.

{¶24} On September 26, 2019, Appellant filed an Application for DNA testing.

{¶25} On October 2, 2019, the trial court denied said motion.

{¶26} Appellant now appeals, raising the following errors for review:

<u>ASSIGNMENTS OF ERROR</u>

{¶27} "I. THE TRIAL COURT ERRED WHEN IT DENIED "DEFENDANT" APPLICATION FOR DNA TESTING, WHEN DNA TESTING WAS NOT GENERALLY ACCEPTED OR THE RESULTS OF DNA TESTING WERE NOT GENERALLY ADMISSIBLE, OR DNA WAS NOT YET AVAILABLE, ALTHOUGH THERE WAS A PRETRIAL REQUEST FOR DNA TESTING.

{¶28} "II. THE TRIAL COURT'S SUMMARY DENIAL OF DEFENDANT-APPELLANT'S APPLICATION FOR DNA TESTING WAS AN ABUSE OF DISCRETION WHERE THE COURT FAILED TO DETERMINE WHETHER THE APPELLANT DEMONSTRATED THAT THE DNA TESTING WOULD HAVE BEEN OUTCOME DETERMINATIVE.

{¶29} "III. THE TRIAL COURT ERRED IN REJECTING HIS APPLICATION WITHOUT REQUIRING THE STATE TO PREPARE A REPORT REGARDING THE QUANTITY AND QUALITY OF THE PARENT SAMPLE AS WELL AS FINDING ON THE CHAIN OF CUSTODY AND RELIABILITY OF THE SAMPLE, AS MANDATED BY R.C. 2953.75 AND R.C. 2953.76."

**I., II., III.**

{¶30} In each of his assignments of error, Appellant argues the trial court erred in denying his application for DNA testing. We shall therefore address the assignments of error simultaneously.

{¶31} The procedure for reviewing and accepting DNA-test applications is set forth in R.C. §2953.71 through §2953.82. After an eligible inmate submits a DNA-test application, R.C. §2953.73(D) states that the trial court "shall make the determination as to whether the application should be accepted or rejected. * * * The court shall make the determination in accordance with the criteria and procedures set forth in [R.C.] 2953.74 to 2953.81."

{¶32} R.C. §2953.73(D) also requires the trial court to consider the application and all corresponding and pertinent files, records, affidavits, documentary evidence, and all materials regarding the proceedings against defendant, "unless the application and the

files and records show [that defendant] is not entitled to DNA testing, in which case the application may be denied." *Id.*

**{¶33}** Following its determination, the trial court shall enter a judgment and order that accepts or rejects the application. R.C. §2953.73(D) mandates that the trial court shall state the reasons for the acceptance or rejection, based on the criteria and procedures of R.C. §2953.71 to §2953.81, within the judgment and order.

**{¶34}** R.C. §2953.74(B) provides:

If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if one of the following applies:

(1) The offender did not have a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, **and,** at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.

(2) The offender had a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is

an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the test was not a prior definitive DNA test that is subject to division (A) of this section, and the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at the trial stage in that case.

**{¶35}** "As each paragraph of the statute uses the conjunctive, we interpret this section of the statute to mean that a defendant has to meet all of the criteria in either (B)(1) or (B)(2)." *State v. Wilkins*, 163 Ohio App.3d 576, 2005-Ohio-5193, ¶10.

**{¶36}** In the instant case, the record reveals that Appellant did file a pre-trial motion for DNA testing; however, Appellant never followed up with the crime lab to have the bag swabbed. No DNA was collected or analyzed.

**{¶37}** As no DNA test was taken or completed in 2014 when Appellant went to trial, Appellant's case falls under R.C. §2953.74(B)(1). However, Appellant does not meet the second requirement set forth in (B)(1), which necessitates that "at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available."

**{¶38}** The trial court, in its judgment entry, stated

The Defendant has failed to mention, let alone argue, that, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available" as he is required to demonstrate under this

code section. The Defendant was tried in 2014 and the Supreme Court recognized DNA testing as admissible and generally accepted in 1992. (Oct. 16, 2019, JE at 3).

**{¶39}** The Ohio Supreme Court recognized DNA testing as generally admissible and generally accepted in *State v. Pierce* (1992), 64 Ohio St.3d 490, 597 N.E.2d 107, when the court stated:

> [Defendant] has not advanced any argument which would justify the use of a standard for the admissibility of DNA evidence different from that used in determining the admissibility of other scientific or technical evidence. DNA evidence may be relevant evidence which will assist the trier of fact in determining a fact in issue, and may be admissible, subject to a judicial analysis for prejudice". *Id.* at 497, 597 N.E.2d 107.

**{¶40}** Thus, DNA testing was found to be admissible evidence prior to appellant's trial in 2014. While some cases have concluded that defendants have met that requirement of R.C. §2953.74(B)(1) if there were subsequent advances in DNA technology that were not available at the time of trial, Appellant herein made no such argument below as to why that would be true in this case. *See, e.g., State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, ¶ 17-18 (2d Dist.),

**{¶41}** Accordingly, as Appellant failed to demonstrate below that he satisfied all of the requirements of R.C. §2953.74(B)(1), we can only conclude that the trial court did not err in rejecting his application for DNA testing.

**{¶42}** Appellant's assignments of error are overruled.

**{¶43}** Accordingly we affirm the decision of the Court of Common Pleas of Richland County, Ohio.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/d 0706